UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO.: 3:25-cr-00270-KDB |
| v. | ) | |
| | ) | **FACTUAL BASIS** |
| MARIAN OVIDIU DUMITRU | ) | |
| | ) | |

NOW COMES the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1.      Defendant MARIAN OVIDIU DUMITRU was a Romanian citizen and brother of Catalin Dumitru. MARIAN OVIDIU DUMITRU maintained a residence in Charlotte, North Carolina.

2.      Y.P., a resident of New Brunswick, New Jersey, was a SNAP beneficiary with a SNAP EBT card account ending in 9928.

3.      M.M., a resident of Trenton, New Jersey, was a SNAP beneficiary with a SNAP EBT card account ending in 2946.

4.      L.M., a resident of Hyde Park, Massachusetts, was a SNAP beneficiary with a SNAP EBT card account ending in 1042.

5.  I.J., a resident of Mattapan, Massachusetts, was a SNAP beneficiary with a SNAP EBT card account ending in 4613.

6.  United States Department of Agriculture ("USDA") was the United States federal executive department responsible for developing and executing U.S. federal government policy on farming, agriculture, forestry, and food.

7.  USDA's Food and Nutrition Service's Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program, was a program funded by the USDA in accordance with the Food Stamp Act of 1977. The USDA worked with state agencies to assist eligible low-income individuals to purchase groceries and certain food items.

8.  Between 1939 and 2001, food stamp program beneficiaries were issued paper coupons, or food stamps, to acquire low or no cost food for themselves and their families. In 2001, the program transitioned from a paper coupon system to the current electronic system of access devices to distribute SNAP benefits. Since 2001, SNAP benefits were deposited into accounts linked to beneficiaries' SNAP EBT cards, which could be used on the same electronic infrastructure as debit and credit cards issued by banks.

9.  Each SNAP EBT card had a unique EBT number that was encoded on the card. Recipients also used unique personal identification numbers ("PINs") as a security feature. Each month, SNAP EBT cards were automatically credited with food stamp benefits to subsidize food purchases by eligible SNAP recipients at participating supermarkets, convenience stores, and other food retailers. When a SNAP EBT card was swiped at a point-of-sale register, the user selected EBT (as opposed to credit or debit), and entered a PIN. Funds were then electronically debited from the recipient's account and credited to the retailer's account. The balance on a SNAP EBT card was available by calling a customer service phone line typically printed on the back of the card.

10.  An "access device" was any card, plate, code, account number, electronic serial number, personal identification number, or other means of account access that could be used, alone or in conjunction with another access device, to obtain money, goods, or services.

11.  An "unauthorized access device" was any access device that was lost, stolen, or obtained with intent to defraud.

12.  A "counterfeit access device" was any access device that was counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device.

13.  "Skimming" was a criminal activity where a device was installed on a point-of-sale payment terminal, ATM, or fuel pump to capture card information and PIN entries.

14.  "Cloning" was the illegal act of copying information from a legitimate credit, debit, or EBT card onto a counterfeit card.

2

15. "Device-making equipment" was any equipment designed or primarily used for making an access device or counterfeit access device.

16. MARIAN OVIDIU DUMITRU, Catalin Dumitru, and their co-conspirators used the following manner and means to execute their scheme to defraud using stolen EBT card numbers and PINs:

   a. They obtained EBT numbers and PINs from legitimate SNAP beneficiaries using skimmers and other means.

   b. They used and attempted to use counterfeit and/or unauthorized access devices linked to the stolen SNAP EBT card numbers and PINs to purchase candy, coffee, energy drinks, infant formula, and other food items without the knowledge or permission of the individuals rightly associated with those SNAP EBT card numbers and PINs.

   c. In doing so, they knowingly and intentionally caused stolen SNAP EBT card information to be transmitted in interstate commerce by means of wire communication in order to complete their fraudulent purchase of candy, coffee, energy drinks, infant formula, and other food items.

   d. They transported, resold, and intended to resell the candy, coffee, energy drinks, infant formula, and other food items they fraudulently purchased using stolen SNAP EBT card numbers and PINs.

17. The warehouse clubs wherein MARIAN OVIDIU DUMITRU, Catalin Dumitru and their co-conspirators purchased goods and wares in the Western District of North Carolina used interstate wire transmissions to send data, including membership data, from point-of-sale devices at their check-outs to servers in Arkansas.

18. The transfer of funds in a SNAP EBT transaction involved multiple wire transmissions through several states:

   a. Authorized SNAP retailers transmitted data from purchases made with SNAP EBT cards to financial services companies that contracted with the United States. These companies were located in states other than North Carolina.

   b. The financial services companies used their databases to verify that funds were available on the SNAP EBT accounts and, if the balances on the accounts were sufficient, sent a funding request to the U.S. Treasury's SNAP account at the Federal Reserve Bank in Richmond, Virgina ("FRB Richmond").

3

19. FRB Richmond initiated a transfer of SNAP funds to banks outside North Carolina. Such banks sent SNAP funds to food sellers' bank accounts to complete SNAP EBT card transactions.

20. In furtherance of the conspiracy and to affect the objects thereof, there was committed by at least one of the conspirators, in the Western District of North Carolina, and elsewhere, at least one of the following overt acts, among others:

a. On or about July 30, 2024, a person unknown to the grand jury opened warehouse club membership ("WCM") number XXXXX3854 in the name of I.B. with an address in Dallas, Texas.

b. On or about September 18, 2024, a person unknown to the grand jury renewed WCM 3854 in the name of I.B. at a warehouse club in Durham, North Carolina.

c. On or about September 18, 2024, at a warehouse club in Durham, North Carolina, defendant Catalin Dumitru used WCM 3854 to purchase infant formula in the amount of $1,199.40 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

d. On or about October 6, 2024, at a warehouse club in Durham, North Carolina, defendant Catalin Dumitru used WCM 3854 to purchase candy in the amount of $535 and infant formula in the amount of $1,127.70 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

e. On or about October 9, 2024, at a warehouse club in Durham, North Carolina, defendant MARIAN OVIDIU DUMITRU used WCM 3854 to purchase energy drinks in the amount of $564.80 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

f. On or about November 1, 2024, a person unknown to the grand jury opened WCM number XXXXX8912 in the name of D.Z. with an address in Severn, Maryland.

g. On or about November 1, 2024, at a warehouse club in Severn, Maryland, a person unknown to the grand jury used WCM 8912 to purchase energy drinks in the amount of $1,242.56 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

h. On or about November 4, 2024, at a warehouse club in Durham, North Carolina, defendant Catalin Dumitru attempted to use WCM 3854 to purchase candy in the amount of $809.64 using warehouse club reward points and a counterfeit and unauthorized access device cloned with stolen information and PINs from legitimate SNAP EBT cards.

4

i.  On or about March 9, 2025, at a warehouse club in Winston Salem, North Carolina, defendant MARIAN OVIDIU DUMITRU used WCM 3854 to purchase candy in the amount of $1,259.52 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

j.  On or about March 9, 2025, at a warehouse club in Winston Salem, North Carolina, defendant MARIAN OVIDIU DUMITRU used WCM 3854 to purchase candy in the amount of $1,259.52 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards.

k.  On or about August 1, 2025, at a warehouse club in Matthews, North Carolina, defendants MARIAN OVIDIU DUMITRU and Catalin Dumitru used WCMs 3854 and 8912 to purchase coffee and candy in the total amount of $15,619.20 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards issued in New Jersey.

l.  On or about August 1, 2025, at a grocery store in Harrisburg, North Carolina, defendant MARIAN OVIDIU DUMITRU used a counterfeit and unauthorized access device cloned with stolen information and a PIN from a legitimate SNAP EBT card to purchase groceries in the amount of $146.80.

m.  On or about August 2, 2025, at a warehouse club in Pineville, North Carolina, defendants MARIAN OVIDIU DUMITRU and Catalin Dumitru used WCMs 3854 and 8912 to purchase coffee and candy in the total amount of $19,206.20 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards issued in New Jersey and Massachusetts.

n.  On or about August 2, 2025, at a warehouse club in Gastonia, North Carolina, defendants MARIAN OVIDIU DUMITRU and Catalin Dumitru used WCMs 3854 and 8912 to purchase coffee, candy, and other items in the total amount of $2,180.02 using counterfeit and unauthorized access devices cloned with stolen information and PINs from legitimate SNAP EBT cards issued in New Jersey and Massachusetts.

o.  On or about August 1 and 2, 2025, in Mecklenburg County, North Carolina, defendants MARIAN OVIDIU DUMITRU and Catalin Dumitru were in possession of fifteen or more counterfeit and unauthorized access devices, to wit: bank cards with magnetic strips cloned with stolen SNAP EBT account information and PINs.

p.  On or about August 2, 2025, in Mecklenburg County, North Carolina, defendant MARIAN OVIDIU DUMITRU was in possession of device making-equipment, to wit: a Deftun MSR X6 capable of encoding and reading magnetic stripes on bank

5

cards and blank cards with magnetic strips.

q. On or about August 1 and 2, 2025, in Mecklenburg County, North Carolina, defendants MARIAN OVIDIU DUMITRU and Catalin Dumitru transferred, possessed, and used, without lawful authority, the SNAP EBT account numbers and PINs of the SNAP recipients listed below:

i. Y.P.,

ii. M.M.,

iii. L.M., and

iv. I.J.

r. On or about each of the dates set forth below, for the purpose of executing the scheme and artifice described above, and attempting to do so, defendants MARIAN OVIDIU DUMITRU and Catalin Dumitru caused electronic sales transaction information to be transmitted in interstate commerce from points-of-sale at the warehouse club stores listed below in the Western District of North Carolina to servers in Arkansas:

| | Date and Time | Location of Warehouse Club Stores Initiating Interstate Wire Transmissions | Amount of Transaction |
|---|---|---|---|
| i. | 8/1/2025 10:12 a.m. | Matthews, North Carolina | $855.83 |
| ii. | 8/1/2025 10:14 a.m. | Matthews, North Carolina | $1,132.87 |
| iii. | 8/1/2025 10:42 a.m. | Matthews, North Carolina | $1,742.33 |
| iv. | 8/1/2025 10:44 a.m. | Matthews, North Carolina | $1,546.07 |
| v. | 8/2/2025 10:11 a.m. | Pineville, North Carolina | $1,462.87 |
| vi. | 8/2/2025 10:11 a.m. | Pineville, North Carolina | $626.37 |
| vii. | 8/2/2025 10:13 a.m. | Pineville, North Carolina | $1,937.22 |
| viii. | 8/2/2025 10:13 a.m. | Pineville, North Carolina | $266.94 |
| ix. | 8/2/2025 10:45 a.m. | Pineville, North Carolina | $1,451.20 |

6

| | Date and Time | Location of Warehouse Club Stores Initiating Interstate Wire Transmissions | Amount of Transaction |
|---|---|---|---|
| x. | 8/2/2025 11:45 a.m. | Gastonia, North Carolina | $14.98 |
| xi. | 8/2/2025 12:11 p.m. | Gastonia, North Carolina | $32.76 |

21.     The offense involved more than 10 victims.

22.     The offense resulted in substantial financial hardship to one or more victims.

23.     The offense involved the possession or use of any device-making equipment.

24.     In carrying out the fraudulent scheme, MARIAN OVIDIU DUMITRU acted with an intent to defraud, and at all times, MARIAN OVIDIU DUMITRU acted intentionally, knowingly and willfully and not by accident or mistake.


RUSS FERGUSON
UNITED STATES ATTORNEY

_____
SARA KINLAW
ASSISTANT UNITED STATES ATTORNEY

ERIC A. FRICK
SPECIAL ASSISTANT UNITED STATES ATTORNEY

<u>Defendant's Counsel's Signature and Acknowledgment</u>

I have read this Factual Basis and the Bill of Indictment in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis and the Bill of Indictment. I hereby certify that the defendant does not dispute this Factual Basis.

_____
Steven Slawinski, Attorney for Defendant

DATED: May 21, 2026

7